**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **STEVEN T. NAGY,** | ) NO. EDCV 05-00561-MAN |
| **Plaintiff,** | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| **Defendant.** | ) |

Plaintiff filed a Complaint on July 12, 2005, seeking review of the denial by the Social Security Commissioner ("Commissioner")[1] of Plaintiff's claim for Disability Insurance Benefits ("DIB"). On August 24, 2005, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation ("JS") on April 19, 2006, in which: Plaintiff seeks

---

[1] Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted in place of Commissioner Joanne B. Barnhart as the Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

an order reversing the Commissioner's decision and either awarding benefits or remanding the case for further appropriate proceedings; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' JS under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff protectively filed his application for DIB on June 12, 2001. (Administrative Record ("A.R.") 12, 31, 43, 140-43.) Plaintiff claims to have been disabled since June 15, 1996, due to hemochromatosis, depression, inability to concentrate, overactive bladder, and dry mouth (A.R. 13, 141.) He has past relevant work experience as a telemarketer, telephone salesperson, and musician. (A.R. 12)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. (A.R. 48-51, 55-58.) On March 12, 2003, Plaintiff, who was represented by counsel, appeared at a hearing before Administrative Law Judge ("ALJ") Mason D. Harrell, Jr. (A.R. 377-95.) On March 27, 2003, the ALJ denied Plaintiff's request for benefits. (A.R. 31-37.) In a May 16, 2003 order, the Appeals Council remanded the case to ALJ Harrell, who was instructed to: (1) obtain available updated treatment records; (2) evaluate Plaintiff's subjective complaints in accordance with Social Security Ruling 96-7p; and (3) if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base, determine whether Plaintiff had acquired any skills that were transferable to other occupations under the

guidelines contained in Social Security Ruling 82-41, identify jobs in the national economy Plaintiff can perform, and resolve any conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). (A.R. 76-78.)

On September 24, 2003, Plaintiff, who was again represented by counsel, appeared at a hearing before ALJ Harrell. (A.R. 396-406.) A further hearing was held on January 15, 2004, to obtain supplemental testimony from an expert in psychology. (A.R. 407-41.)

On March 9, 2004, ALJ Harrell affirmed the denial of benefits. (A.R. 43-47.) On July 20, 2004, the Appeals Council dismissed Plaintiff's request for review based on his failure to file within 60 days of the decision. (A.R. 113-15.) However, on September 16, 2004, the Appeals Council vacated its July 20, 2004 decision and remanded the case to the ALJ. (A.R. 118-20.) The Appeals Council instructed the ALJ to: (1) evaluate Plaintiff's subjective complaints according to Social Security Ruling 96-7; (2) give further consideration to Plaintiff's maximum residual functional capacity during the entire period at issue and provide a rationale for his residual functional capacity assessment, with specific references to the evidence of record in support of the assessed limitations; and (3) if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base, identify jobs in the national economy Plaintiff can perform, and resolve any conflict between the vocational expert's testimony and the DOT. (A.R. 119.)

On January 6, 2005, Plaintiff, who was again represented by counsel, appeared in a hearing before ALJ David Ganly. (A.R. 442-79.) The ALJ denied Plaintiff's request for benefits on February 25, 2005. (A.R. 11-20.) Thereafter, on May 20, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (A.R. 4-6.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his February 25, 2005 written decision, ALJ Ganly found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.[2] (A.R. 19.) The ALJ determined that Plaintiff had "severe" impairments, consisting of an affective disorder and a history of substance abuse, but that his impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (*Id.*)

The ALJ further found that Plaintiff's complaints of disabling pain generally were not credible. (A.R. 17, 19.) He found that Plaintiff had the residual functional capacity to perform a significant range of unskilled, "medium" work activities. (A.R. 19.) Specifically, the ALJ found that Plaintiff was limited to: lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; walking, standing, and/or sitting for six hours out of an eight-hour workday; not working at heights or around dangerous machinery; not having to comply with more than four or five-step, moderately complex tasks; not having intense interaction with

---

[2] The ALJ determined that Plaintiff met the non-disability requirements for a period of disability and DIB, and was insured through December 31, 2001. (A.R. 19.)

co-workers; having less than a moderately stressful work environment that includes low stress supervision; and not having responsibility for the safety of others. (A.R. 13.)

The ALJ found that Plaintiff: has a "high school (or high school equivalent) education," was a "younger individual between the ages of 45 and 49" as of Plaintiff's alleged onset date, and was a "person closely approaching advanced age" at the time of the decision.[3] (*Id*.) Based on his residual functional capacity finding, the ALJ found that Plaintiff could not perform his past relevant work. (A.R. 19.) The ALJ further found that Plaintiff has no transferable skills from his past relevant work and/or that transferability of skills was not an issue in this case. (*Id*.) Using Rule 203.29 and 203.22 of the Medical-Vocational Guidelines (the "Grids") as a framework and relying upon the testimony of a vocational expert, the ALJ found that Plaintiff could perform other work such as a bagger, food service worker, dining room attendant, or cleaner/housekeeper.[4] (A.R. 18-19.)

Accordingly, the ALJ concluded that Plaintiff was not "disabled" within the meaning of the Social Security Act. (A.R. 19.)

---

[3] Plaintiff was born on August 2, 1952, and was 52 years old at the time of the hearing. (A.R. 12, 19, 141.)

[4] Rule 203.29 directs that a person who is a "younger individual," with a high school education, and unskilled, is not disabled. Rule 203.22 directs that a person who is "closely approaching advanced age," with a high school education, and unskilled, is not disabled. 20 C.F.R. Pt. 220, App. 2.

5

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance - it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id.* at 1039-40; *see also* Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges two issues: (1) he contends that the ALJ failed to consider properly his treating physician's opinion; and (2) he contends that the ALJ failed to develop the record properly. (JS at 3-4, 7-8.)

**A.   The ALJ Failed To Consider The Treating Psychiatrist's Opinion Properly.**

Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen, 80 F.3d at 1279; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. *Id.* Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Where the treating physician's opinion is contradicted, the ALJ may reject it in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).

Here, the ALJ discussed the medical evidence from Plaintiff's treating physician, Dr. Jeremiah Umakanthan, stating:

7

There are medical records from the San Bernardino County Department of Behavioral Health dated April 29, 2002 through September 27, 2002 (Exhibit 11F, pp. 1-20 and Exhibit 14F), September 26, 2002 through February 4, 2003 (Exhibit 13F, pp. 1-4 and 15F) and November 25, 2003 through December 20, 2004 (Exhibit 16F, pp. 1-11). [Plaintiff] was diagnosed with a mood disorder and alcohol dependence on April 29, 2002. He was treated with medications that included Celexa, Wellbutrin and Prozac. *The handwritten treatment notes are difficult to read*, but [Plaintiff] received counseling and medication review on a monthly to [bi-monthly] basis. The mental status evaluation dated April 29, 2002 revealed the following: [Plaintiff] was oriented to person, place, time and situation; his speech was organized; intellectual functioning was normal; but [Plaintiff] complained that his mind wandered; [Plaintiff's] thought content was normal with no delusions; judgment and insight were poor; and [Plaintiff] was anxious. Id.

. . . .

. . . [Plaintiff] has been diagnosed with mental impairments, joint pain, diabetes and hemochromatosis. A review of the medical records confirms that [Plaintiff] admitted to alcohol abuse and was treated for this problem. However, there is very little evidence of any physical complaints or diagnoses. There have been several medical experts testify[ing] in this matter including Dr. Samuel

> Landau, a specialist in internal medicine, Dr. [Joseph] Malancharuvil[,] a specialist in clinical psychology[,] and most recently[,] Dr. [Craig] Rath, also a specialist in clinical psychology. All of these medical experts have come to basically the same conclusions. [Plaintiff's] medical records support that [Plaintiff] had an alcohol abuse problem at least through 2002. However, there is evidence that [Plaintiff] was able to function normally without alcohol and there is no evidence that his alcohol abuse caused a disabling medical impairment for a twelve month period.
>
> . . . .
>
> There are no treating physician opinions that relate to [Plaintiff's] inability to work. . . .

(A.R. 15-17; emphasis added.)

With respect to Plaintiff's mental residual functional capacity, the ALJ found that Plaintiff was limited to: no more than four to five-step, moderately complex tasks; no intense interaction with coworkers; less than a moderately stressful work environment that includes low stress supervision; no work at heights or around dangerous machinery; and no responsibility for the safety of others. (A.R. 13.) The ALJ's finding primarily was based on the testimony of Dr. Rath, who explained that his opinion regarding Plaintiff's limitations was based on "an overall average because it appears as if [Plaintiff] goes on a binge, gets sick, does worse for a while, then does somewhat better and [then]

he goes on another binge."[5]  (A.R. 16, 464.)

Plaintiff contends that the ALJ failed to consider properly Dr. Umakanthan's May 17, 2002 opinion regarding Plaintiff's limitations. (JS at 3-4.)  The ALJ did summarize Plaintiff's treatment at the San Bernardino County Department of Behavioral Health ("San Bernardino"), where Dr. Umakanthan was Plaintiff's primary treating physician, from April 29, 2002, to December 20, 2004.  (A.R. 15, 282-301, 307-10, 311-15, 317-22, 323-33.)  The ALJ specifically discussed the April 29, 2002 findings of a mental status examination performed by Dr. Elizabeth Tamoush.  However, although the ALJ correctly noted that this report indicated that Plaintiff had "normal" thought content with "no delusions," this report also indicated that Plaintiff was having visual

---

[5]  Dr. Rath observed that Plaintiff suffered from reoccurring episodes of alcohol abuse.  (A.R. 449.)  However, Dr. Rath relied upon Dr. Ernest Bagner's August 20, 2001 consultative report, which Dr. Rath interpreted as indicating that Plaintiff was able to function fairly well during periods of sobriety.  (A.R. 236-39, 464-66.)  Specifically, Dr. Rath testified that this report suggested that "during a period of time when [Plaintiff] claims he wasn't using alcohol, a doctor [evaluated] him and [found] very little wrong with him."  (A.R. 465.)

In his August 20, 2001 report, Dr. Bagner diagnosed Plaintiff with depressive disorder, not otherwise specified, and assessed Plaintiff's Global Assessment of Functioning Score ("GAF") at 69.  (A.R. 238-39.)  A GAF is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 2000) (hereinafter "DSM IV").  A GAF of 69 denotes "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationship."  DSM IV at 34.  Dr. Bagner further found that Plaintiff: "most likely [would] be able to interact with a supervisor"; "was able to carry out simple three-part commands"; "would likely be able to carry out repetitive tasks"; "would be able to handle the stress inherent in the work environment and work with peers and the public"; and "would be able to attend work on a regular basis."  (A.R. 239.)

hallucinations: "[Plantiff] said he often hears someone calling his name – sometimes 6 or 7 [times per] day." (A.R. 15, 299.) In addition, in an April 29, 2002 progress note, Dr. Tamoush diagnosed Plaintiff with mood disorder, not otherwise specified and alcohol dependence and assessed a GAF of 55, which denotes significant symptoms.[6] (A.R. 282.) Thus, the ALJ's summary of these treatment records was not a fair and complete characterization of them. *See* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).

Furthermore, the ALJ did not address the opinions set forth in Dr. Umakanthan's May 17, 2002 psychiatric evaluation. In this evaluation, Dr. Umakanthan diagnosed Plaintiff with depressive disorder, not otherwise specified; psychotic disorder, not otherwise specified; and alcohol dependence.[7] (A.R. 294.) He further assessed Plaintiff's GAF at 40, which is indicative of even more significant mental health limitations than Dr. Tamoush found.[8] (*Id.*) Thus, like Dr. Tamoush's

---

[6] A GAF of 51-60 indicates "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." DSM IV at 34.

[7] Dr. Umakanthan's May 17, 2002 mental status examination revealed: Plaintiff's general appearance and behavior were appropriate for his age; his speech was normal; he was not depressed; his affect was appropriate; his thought process and content were relevant and coherent; he had no perceptual disturbances; his cognitive functioning was impaired (*i.e.*, attention span was assessed a score of 4 out of 7); and his judgment was either normal or partially normal. (A.R. 293.)

[8] A GAF of 31 to 40 indicates "[s]ome impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (*e.g.*, depressed person avoids friends, neglects family, and is unable to work...)." DSM IV at 34.

11

opinions, Dr. Umakanthan's opinions are inconsistent with Dr. Rath's conclusion that Plaintiff has only "moderate" mental limitations. The ALJ failed to provide <u>any</u> reason, let alone a "specific and legitimate" reason, for rejecting Dr. Umakanthan's opinions.[9] <u>Lester</u>, 81 F.3d at 830.

Accordingly, the ALJ's failure to address Dr. Umakanthan's May 17, 2002 opinions constitutes error.

**B.    The ALJ Failed To Clarify The Opinions Of Plaintiff's Treating Doctors.**

The ALJ has an affirmative duty to develop the record, even if the claimant is represented by counsel. *See* <u>Brown v. Heckler</u>, 713 F.2d 441, 442-43 (9th Cir. 1993). The duty to re-contact a treating physician is triggered where the information from the treating sources is inadequate to make a determination regarding disability. 20 C.F.R. §§ 404.1512(e), 416.912(e)(duty to re-contact treating physician); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 956-57, 959 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1519a(b), 416.919a(b)(listing situations requiring a consultative

---

[9]    A GAF is not determinative of a mental disability for social security claim purposes. *See* 65 Fed. Reg. 50746, 50765 (August 21, 2000)("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."); <u>Howard v. Commissioner of Soc. Sec.</u>, 276 F.3d 235, 241 (6th Cir. 2002)(rejecting the claimant's argument that the ALJ improperly failed to consider her GAF from her treating physicians in assessing her residual functional capacity, reasoning that "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). Nevertheless, although the ALJ was not required to reject expressly Dr. Umakanthan's GAF assessment, the ALJ was required to properly consider Dr. Umakanthan's medical findings that are indicative of a major mental impairment (*e.g.,* psychotic symptoms, attention deficiencies).

examination, such as a conflict, inconsistency, ambiguity or insufficiency in the evidence).

Plaintiff contends that the ALJ failed to develop the record adequately with respect to Dr. Umakanthan's opinion, because, as the ALJ noted, handwritten portions of his records were "difficult to read." Plaintiff further contends that the ALJ should have contacted Dr. Umakanthan to ascertain what was contained within the illegible portions of his opinion. (JS at 7-8.)

When a substance abuse issue exists in a disability case, as it does here, the ALJ must perform a two-step analysis. First, the ALJ must evaluate which of the claimant's physical and mental limitations would persist if the claimant refrained from drug and alcohol use. Second, the ALJ must determine whether the claimant's remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b), 416.935(b). It is not proper to conclude simply that substance abuse is a contributing factor material to the determination of disability without distinguishing between the substance abuse contributing to the disability and the disability remaining if the Plaintiff stopped using drugs or alcohol. Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998)(reversing and remanding case for the ALJ to determine whether claimant's disability would have continued if she stopped using drugs and alcohol). In addition, "[i]n materiality determinations pursuant to 42 U.S.C. § 423(d)(2)(C), the claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination." Ball v. Massanari, 254 F.3d 817, 820 (9th Cir. 2001).

As discussed above, the record shows that Plaintiff suffered from both depression and alcohol dependence. Thus, the critical inquiry regarding Plaintiff's disability is to what extent Plaintiff would be limited from his depression in the absence of his substance abuse. Based on the testimony of Dr. Rath, the ALJ found that Plaintiff's depression, in the absence of his alcohol abuse, was not disabling. (A.R. 16-17.) However, Plaintiff's treating records, including Dr. Umakanthan's records, do not set forth Plantiff's mental limitations, much less his limitations in the absence of alcohol abuse.

Without question, significant portions of Dr. Umakanthan's notes are unclear, as the ALJ himself conceded. In view of the facts that portions of Dr. Umakanthan's records are illegible and that the legible portions of his records and Plaintiff's other treating records do not indicate Plaintiff's limitations in the absence of his substance abuse, the treating records do not provide an adequate basis upon which to base a finding regarding Plaintiff's disability. The ALJ's reliance on Dr. Rath's testimony to resolve this issue was error, as a review of his testimony regarding Plaintiff's limitations was not based on substantial evidence. Indeed, Dr. Rath's testimony indicates that, despite his reliance upon Dr. Bagner's report, which indicated that Plaintiff could function fairly well when he was not using alcohol, there was "insufficient" evidence to determine whether Plaintiff was disabled due to a bi-polar disorder in the absence of alcohol abuse.[10] Thus, the case

---

[10] The ALJ asked Dr. Rath: "So apart from the alcohol issue, do we have a stand-alone . . . bi-polar disorder under 12.04(A)(3)[?]" (A.R. 463.) Dr. Rath responded by noting that Plaintiff was taking lithium and concluding, "I guess the answer is, insufficient information." (A.R. 463-64.) When the ALJ further inquired as to

14

should be remanded for the ALJ to contact Dr. Umakanthan for clarification of the illegible portions of his records and to provide an opinion regarding whether, and to what extent, Plaintiff would be limited from his depression in the absence of alcohol abuse. 20 C.F.R. §§ 404.1512(e), 416.912(e); Thomas, 278 F.3d at 956-57, 959.

Accordingly, on remand, after obtaining clarification from Dr. Umakanthan as directed above, the ALJ should render a new finding regarding Plaintiff's mental residual functional capacity in accordance with the standards regarding the consideration of the impact of drugs and alcohol abuse in determining disability.

**C.   Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were

---

Plaintiff's limitations in the absence of alcohol abuse, Dr. Rath responded that the record was unclear, stating, "Then we're back on the question of, does he really have a bipolar disorder." (A.R. 464.)

properly evaluated, remand is appropriate. *Id.*

Here, remand is the appropriate remedy so that the ALJ may rectify the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); Harman, 211 F.3d at 1178 (when outstanding issues that must be resolved before the question of disability can be determined, remand is appropriate); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 20, 2007

                                      /s/
                          MARGARET A. NAGLE
                    UNITED STATES MAGISTRATE JUDGE